## KEHRER *v.* STEWART.

1. A legislative act which imposes a specific tax on certain business occupations and which does not become operative until the commencement of the year following its passage is not retroactive or violative of that section of the Federal constitution which forbids a State's passing any ex post facto law or law impairing the obligation of contracts.
2. A tax on the privilege of selling goods is, in effect, a tax on the goods themselves.
3. One who in this State, as the agent of a principal residing in another State, takes orders on such principal for the purchase of goods held in such other State, and who, when the goods are shipped by his principal to him, receives them in this State and delivers them in the original packages to the customers from whom he obtained the orders, and upon delivery receives from them the price of the goods, is engaged in interstate commerce
4. When goods, the property of a resident of another State, are shipped from that State to the owner's place of business in this State, there to be stored and offered for sale in open market by his agent, the business of selling them in this State is not interstate commerce, but is subject to taxation by the State. The constitution of the United States protects such goods only to the extent of preventing State legislation which imposes on them, because of their origin, burdens which are not imposed upon goods the product of the State imposing such burdens.
5. One who is subject to a specific occupation tax by reason of his conducting, for another, a domestic business within this State, is not rendered exempt from such tax because he also conducts, for the same principal, other business which is not subject to State taxation.

Argued January 24, — Decided May 30, 1903.

Complaint for damages. Before Judge Reid. City court of Atlanta. January 24, 1903.

*Smith, Hammond & Smith,* for plaintiff.

*Black & Jackson,* for defendant.

SIMMONS, C. J. Suit was brought by Kehrer against Stewart, in the city court of Atlanta. This suit was based upon the exaction by the defendant, who was tax-collector of the county, of a specific tax assessed against petitioner as agent, in Fulton county, "of Nelson Morris & Co., a packing-house doing business in this State." This tax was alleged to be illegal and void as applied to the petitioner, who had paid it under protest and to prevent the

immediate seizure of his property and person.  A demurrer to the petition was overruled, and Stewart brought the case to this court, where the judgment was reversed.  An amendment to the petition was then made in the lower court, and allowed.  The demurrer was renewed, and the court sustained the same.  To this judgment Kehrer excepted.  The substance of the original petition is stated in 115 *Ga.* 184.  The amendment, without stating any new facts pertinent thereto, contained several reasons or arguments to show that the exaction of the tax from the petitioner was contrary to the fourteenth amendment to the constitution of the United States, in that it deprived him of his property without due process of law, was a denial to him of the equal protection of the laws, and abridged his privileges; and also to show that the act imposing this tax was violative of the constitution of this State, in that the tax was not uniform, but based upon an unjust and arbitrary classification.  With these questions we do not now deal.  They were raised and passed upon when the case was here before, and have been adjudicated against the petitioner.  He can not review the former decision or reopen a binding adjudication by adding to his petition a detailed argument of the points already made and decided.  We shall, therefore, confine our discussion to the questions made by the amendment, which were not passed upon before and which are therefore not res judicatæ.  These questions are, (1st) whether the act imposing the tax is ex post facto, or impairs the obligation of contracts; and (2d) whether the act is an illegal interference with interstate commerce.

1.  The statutory enactment under discussion imposed a specific tax " upon all agents of packing-houses doing business in this State," and made penal the pursuit of such an occupation by any one who had not paid the tax, which was $200 per annum.  Some five months before the passage of the act, the petitioner entered into a contract of employment with Nelson Morris & Co., under which he was to be paid a stipulated sum per week for his services as chief clerk and manager of their house in Atlanta, Georgia.  Under these facts, the statute is clearly not retroactive as applied to petitioner, nor can we see how it can be regarded as in any sense retroactive.  It does not relate to any act or acts done prior to its passage, but only to the pursuit of the designated occupation, after the commencement of the year following the passage of the act, by one who has

failed to pay the tax imposed for the year in which he engages in that occupation. Nor is the petitioner's contract violated. In the first place, it appears that his contract ·is not for any definite term. He is subject at any time to be discharged without notice, and he was apparently under no obligation to continue his services after the imposition of the tax on his occupation. But even were this not true, the statute would not be objectionable as impairing the obligation of his contract. The State has, generally, a right to impose taxes upon occupations. One who lives in a State, and pursues therein an occupation which is not taxed, is bound to know that the legislature may at any time, in the exercise of legislative discretion and power, impose a reasonable tax upon his occupation. He can not, merely by contracting with other private persons to continue to pursue his occupation, deprive the legislature and the State of the right to raise revenue by taxing his occupation. If the tax is in other respects constitutional, it can not be held invalid merely because it adds to his expenses an item which he, not foreseeing a change in legislative policy, had not anticipated when he entered into the contract.

2, 3, 4. The ground principally relied upon was that the tax was an illegal interference with interstate commerce. From the petition as amended it appeared that Nelson Morris & Co. are a partnership composed of citizens of the State of Illinois; " a packing-house is a place where the business of slaughtering animals and dressing and preparing the products of their carcasses for food and other commercial purposes is carried on ·" Nelson Morris & Co. "do not anywhere within the State of Georgia slaughter, dress, cure, pack, or manufacture products of any animals for food or commercial use;" they have in Atlanta a place of business where at wholesale they sell fresh, cured, and salt meats and the products that have been manufactured from the carcasses of slaughtered animals, but conduct at that place no other kind of business; petitioner had no interest in the business other than that of a paid employee; he was the chief clerk and manager of the Atlanta place of business before the passage of the act imposing the tax, and continues to fill the same position; petitioner, as chief clerk and manager or superintending agent, is one of the agencies of Nelson Morris & Co., who are engaged in the business of curing and packing meats for commerce, and who, as part of their business, ship to other States

in the United States meats and the products thereof to be sold to customers calling for same; as a necessary part of this last-mentioned department they have a place of business in Atlanta where meats and the products thereof are put and temporarily held for sale, and as another part in the conduct of their business they employ petitioner as chief clerk and manager, who, in connection with the other employees, conducts the business in Atlanta of selling and distributing the products of the packing-house of Nelson Morris & Co., shipped from the packing-house to Atlanta.    " All these products are manufactured and prepared for market in the State of Illinois and shipped to the various business places of said Nelson Morris & Co., in the United States, including the said house at Atlanta, Georgia.    In most cases said goods are sold at or before the day of their shipment, and, when received in Atlanta, delivered in the original packages to the purchasers of said goods; and in all cases title to the goods remains in said Nelson Morris & Co. until sold and delivered to their customers.  · The rest of said goods so shipped to Atlanta, Georgia, are stored in their place of business at Atlanta in the original form and package as when shipped and delivered, and there temporarily remain until in due course of trade the same can be disposed of."    In order for Nelson Morris & Co. to dispose of the products shipped from their packing-house in Illinois to the city of Atlanta, it is necessary for them to have a place of business in Atlanta where such packing-house products can be stored and preserved until sold and delivered, and to have in their employ at their place of business in Atlanta some person acting in the capacity of chief clerk and manager, as does petitioner.    While the statute purports to impose a tax on petitioner as an individual, the tax is in fact on the company which employs him, and is therefore on the business of that company.    For these reasons the petition claimed that the statute imposing the tax was an interference with the exclusive power of Congress to regulate interstate commerce, was violative of the constitution of the United States, and was void as against petitioner.    The demurrer filed by the defendant was a general one to the effect that the petition set out no cause of action.

It is well established and sound law that where the burden of a tax falls on the thing which is the subject of taxation, the tax is to be regarded as laid on the thing rather than on the individ-

ual who is charged with the duty of paying it into the treasury. Brown v. Maryland, 12 Wheat. 419. A tax or charge for a license to sell goods is, in effect, a tax on the goods themselves. Welton v. Missouri, 91 U. S. 275. A sale, to a customer in this State, of goods which are in another State, to be delivered to a common carrier for shipment to him, is interstate commerce. Following the recent case of Caldwell v. North Carolina, 23 Sup. Ct. 229, this court has held that "One who in this State, as the representative of a principal residing in another State, takes orders on such principal for the purchase of goods held in such other State, and who, when the goods are shipped by his principal to him, receives them in this State, breaks the original packages in which they are contained, and distributes them among the customers from whom he obtained such orders, and upon delivery receives from them the price of the goods, is engaged in interstate commerce." Stone v. State, this term, 117 Ga. 292, 43 S. E. 740. Under these rulings, by which we are bound, that part of Nelson Morris & Company's business which consisted in shipping goods to Atlanta to fill orders previously received, the goods being delivered in accordance with such orders, was interstate commerce. It was, therefore, not subject to taxation or interference by the State, and an act seeking to impose any tax upon such a business would be unconstitutional and void. The occupation of the plaintiff in error as agent for the conduct of this part of the business is so closely and directly connected therewith that, in so far as the tax act seeks to tax him as such agent, the act is void.

From the petition, however, it appears that Nelson Morris & Co. are engaged also in a business which is subject to State taxation and control. Where property has been brought into a State and has become itself subject to taxation therein, its sale in such State is not commerce between the States, but is purely intrastate. "While it is exclusively the province of Congress to regulate commerce between the several States, and to protect the same from hostile State legislation, yet when products are shipped from one State and lodged in another, there to be offered for sale in open market, the business of selling them there is no longer interstate commerce, but assumes a domestic character and becomes subject to the laws of taxation of force in the State where such business is pursued. The property involved in the conduct of this business, having become

intermingled with the general mass of property in the State, has itself become subject to taxation there; and, upon principle, the business of selling it is alike taxable in that jurisdiction." *Singer Mfg. Co.* v. *Wright*, 97 *Ga.* 114, 122. Coal shipped from Pennsylvania to New Orleans and there put up for sale "had come to its place of rest, for final disposal or use, and was a commodity in the market of New Orleans. It might continue in that condition for a year or two years, or only for a day. It had become part of the general mass of property in the State, and as such it was taxable." Such a tax, when not discriminating against goods the product of other States, is not a regulation of interstate commerce. *Brown v.* Houston, 114 U. S. 622. See also *Emert v.* Missouri, 156 U. S. 296. From the petition it appears that a portion of the meats and other packing-house products handled by the petitioner were shipped to Atlanta without any previous sale or contract to sell. They were, in the original form and package, stored in the Atlanta house of Nelson Morris & Co. and there preserved and held for sale in due course of trade. This part of the business was subject to State taxation. As to this part, Nelson Morris & Co., through the petitioner as their manager, were running a branch house in Atlanta and there carrying on a domestic business. The goods were offered for sale to whomsoever might buy, and, until sale, were stored and preserved. Such a business is not free from State taxation as interstate commerce, though the title to the goods be in non-residents who have shipped the goods to the branch house for sale. Of course "it is true," as was said by Lumpkin, J., in *Singer Mfg. Co.* v. *Wright*, supra, "that where property has been shipped from one State to be sold in another, the business of conducting sales of it would be protected from local legislation burdening it with a tax not imposed upon the same business carried on in articles produced within the State levying the tax." See also Machine Co. *v.* Gage, 100 U. S. 676; American Harrow Co. *v.* Shaffer, 68 Fed. 757. When goods are brought from one State into another to be offered for sale and are commingled with the property of the latter, their sale is not interstate commerce, and the power of the Federal government protects them only to the extent of preventing discriminating State legislation which imposes burdens on such goods because of their origin. The statute here involved does not make any discrimination against packing-house products brought in from other States,

but imposes the tax upon all agents of packing-houses, foreign or domestic, doing business in this State, whether they deal in products of this or of other States. Petitioner, as managing agent, is conducting two kinds of business. One of these has to do with interstate commerce, and can not be taxed by the State; the other is domestic, and is subject to State taxation. Can he be required to pay the tax imposed by the tax act?

5. Counsel for the plaintiff in error relied upon the case of Le-Loup v. Port of Mobile, 127 U. S. 640, contending that the tax on the agent affected the whole of the business of Nelson Morris & Co. in this State, and that, therefore, the tax could not be legally collected even though a small part of this business were subject to taxation. We think that the case just cited is not applicable. Congress, by an act passed in 1866, had declared that the erection of telegraph lines should, as against State interference, be free to companies which accepted the terms and conditions of the act, and that a telegraph company of one State should not, after accepting them, be excluded by another State from prosecuting its business within her jurisdiction. It was held, not only that the interstate business of such a company was exempt from taxation, but that the company had become an agent of the United States, and that the business it did for the Federal government was in the nature of postal service and beyond the taxing power of the State. The tax which was held to be unconstitutional sought to prohibit a telegraph company, operating under the act of 1866, from doing any business within the State without first paying a specific tax and procuring a license. The court decided that this tax affected the entire business of the company, that which was interstate as well as that which was domestic, that which was done for the government as well as that which was done within the State for private persons. Under this decision, the domestic private business, even of a telegraph company which has accepted the provisions of the act of Congress, is still subject to taxation by the State. The imposition of a specific license tax upon such of a telegraph company's business as is not interstate is valid although it is imposed upon a company which does interstate business also. Postal etc. Co. v. Charleston, 153 U. S. 692. "A single tax, assessed under the laws of a State upon receipts of a telegraph company which were partly derived from interstate commerce and partly from commerce within

the State, and which were capable of separation but were returned and assessed in gross and without separation or apportionment, is invalid in proportion to the extent that such receipts were derived from interstate commerce, but is otherwise valid." Ratterman *v.* Western Union Tel. Co., 127 U. S. 411. See also Western Union Tel. Co. *v.* Alabama, 132 U. S. 472. The act involved in the present case imposes a tax on the agents of packing-houses which do business in the State. It is unconstitutional only to the extent that it seeks to tax interstate commerce. To that extent it is invalid, and the plaintiff in error would not have been subject to the tax at all had he confined himself to interstate business. He is, however, agent for a concern which is doing domestic business in this State, and as such agent he is subject to the tax. He is not relieved from paying the tax because he, *in addition*, does an interstate business which is not taxable. As well might a real estate agent seek to evade the payment of a lawful municipal tax on his occupation because, forsooth, he also practised law and lawyers are not, in this State, taxable as such by municipal corporations. If a man is embarked in a business on which a tax is properly imposed, he may avoid the tax by desisting in due time from the prosecution of such business. If he continue in the business, he can not render it or himself exempt from taxation by adding to his original occupation another which is not subject to taxation. Nor does it matter that in the present case "most" of the business in which plaintiff in error is engaged is interstate. Agents of Georgia packing-houses have to pay the prescribed tax, while this is escaped by the agents of packing-houses in other States which do in this State a business which is interstate commerce. Suppose a packing-house of another State should in this State operate a business which was purely domestic, could it be seriously contended that such a concern should be exempt from State taxation? Suppose its business was domestic except when it shipped special goods into this State on special orders which could not be filled from the stock regularly kept here, could it be held exempt from an occupation tax here because such part of its occupation consisted of interstate business? And if the business is taxable when it is principally domestic, what would be the law when it is half domestic and half interstate? What when "most" of the business is interstate and the remainder domestic? The true rule is that when one does any business which

is subject to an occupation or privilege tax by the State, he is subject to any tax which the State may lawfully impose thereon, irrespective of what other business or occupation he may have. If he would escape the tax, let him avoid the business which is subject to the tax and confine himself to that which is not. If he would continue to pursue the taxed business, let him pay the tax which is imposed upon all who are engaged therein. He can not continue in that business and, by engaging also in another and nontaxable business, create an exemption for himself, and thus outstrip those of his competitors who still follow the taxed business only. We conclude that the plaintiff in error is subject to the tax imposed by the tax act upon the agents of packing-houses which do a domestic business within this State, and that the demurrer was properly sustained.        *Judgment affirmed.    By, five Justices.*